## KING et al. vs. CLAY et al.

1. COURTS: *Power of, over process. Injunction against.*

   Common law courts have jurisdiction and power over their writs, and over the officers who execute them, and may, on motion, recall and quash process illegally issued. This being a plain and complete remedy at law to a party to an execution illegally issued, he can not apply to chancery for injunction against it. But one who is not a party to an execution illegally levied on his property, has not this remedy, and may apply to chancery to enjoin the sale.

King et al. vs. Clay et al.

2. FRAUDULENT CONVEYANCE: *None but creditor can assail.*

One who is not a creditor, is not in condition to ask chancery to set aside an alleged fraudulent conveyance of a debtor.

3. JUDGMENT: *Amendment of without notice, error.*

Failure to give notice to the adverse party of an application to amend a judgment, is ground for reversing the order of amendment, on appeal or writ of error; but the order can not be held void in a collateral proceeding.

4. SAME: *Entry procured by fraud, vacated in chancery. Fraud, how charged.*

Chancery will vacate an entry procured by fraud; but the allegations of fraud must be specific of the facts constituting it. General allegations are not sufficient.

5. DECREE: *Binds only parties: Reversed if necessary party not made.*

A decree is not binding upon one not a party to the suit. It is error in a court to render a decree without having before it a party necessary to make it final and effective.

APPEAL from *Lonoke* Circuit Court in Chancery.
Hon. J. W. MARTIN, Circuit Judge.
*Clark & Williams*, for appellant.
*Chapline*, contra.

ENGLISH, C. J. The material facts of this case, as disclosed by the pleadings and exhibits, are, that, on the sixth of April, 1866, Marion M. Clay, administrator of Thadeus N. Ferrell, deceased, commenced an action of replevin, in the detinet, against William Valliant, in the circuit court of Arkansas county, for a two-horse wagon, the declaration alleging that Valliant received the wagon of Clay, to be redelivered on request. Demand, and refusal, etc.

On the execution of a personal bond by Clay, with sureties, the sheriff seized the wagon, under the writ of replevin, and delivered it to him.

At the return term, Valliant pleaded non-detinet, and the

cause was continued. At the May term, 1867 (sixteenth of May), the case was submitted to the court, sitting as a jury. The court found the issue for Valliant; fixed the value of the wagon at $125, and damages at $25, and, Valliant electing to take the value of the property, etc., the court rendered a personal judgment against Clay, in his favor, for $150, and costs of the suit.

At the May term. 1870 (seventeenth of May), the following entry appears to have been made in the case, Hon. Henry B. Morse, presiding as circuit judge; Hon. William M. Harrison having presided when the above judgment was rendered :

"Come the parties, and it appearing that at the May term, 1866, the said Marion J. Clay, administrator of the estate of Thadeus N. Ferrell, brought his action of *trespass on the case* against William Valliant, and that in said cause, at the May term, 1867, judgment was rendered in said cause against Marion J. Clay, in his individual character ; and, it further appearing that said judgment should have been entered against Marion J. Clay as administrator of Thadeus N. Ferrell, and that the entering of the same against said Marion J. Clay, in his individual character, was through an error and misprision of the clerk, it is, on motion of the plaintiff, ordered that said judgment be, and the same is hereby, corrected so as to be against the said Marion J. Clay as administrator of the estate of Thadeus N. Ferrell ; and it is, on motion, further ordered that such correction take effect, and have force. from hence of the May term, 1867."

On the twenty-second of December, 1876, a personal execution was issued against Clay, on the original judgment as entered the sixteenth of May, 1867, to the sheriff of Lonoke county, taking no notice of the entry of the seventeenth

of May, 1870, modifying the judgment.    Upon the execution was indorsed, by the clerk who issued it, a credit of $75, as of the third of November, 1868; and a further indorsement that William Valliant, in whose favor the judgment upon which the execution issued was obtained, died in June, 1870; and that, on the third of January, 1871, George W. Turner was appointed by the probate court of Arkansas county, administrator of his estate, and, at the October term of said court, ordered to give a new bond as such administrator, and had failed to give such bond.

The execution came to the hands of J. M. King, sheriff of Lonoke county, and was levied on lands situated in that county, as the property of Clay, and the lands were advertised to be sold the tenth of February, 1877.

Before the day of sale, Charlie Clay and Harry Clay, minors, by their next friend, Marion J. Clay, and the latter in his individual capacity, filed the bill in this case, on the chancery side of the circuit court of Lonoke county, against King, as sheriff, praying that the sale of the lands, under the execution, be enjoined.

The bill alleges, in substance, that complainant, Marion J. Clay, was appointed administrator of the estate of Thadeus N. Ferrell, by the probate court of Arkansas county, on the —— day of ——, 1866; gave bond, etc., and acted as such administrator until the —— day of ——, 1868.

That, as such administrator, he brought the suit against Valliant, which resulted in a personal judgment against him, as above shown; and that the judgment was corrected by the entry of May 17, 1870, copied above.

That when the judgment was rendered, and at the time it was amended, the estate of Ferrell was solvent; that there was real property belonging to the estate, situated in Arkansas and Prairie counties, and yet property in said

counties more than enough to pay the judgment, if, in fact, it could be collected by law.

The bill then sets out the personal execution issued against Clay, and the levy upon the lands, etc., as above stated; and alleges that all of the lands levied on are the property of the minor complainants, except the northwest quarter of section twenty-seven, township two south, range eight west, which is averred to be the individual property of Marion J. Clay, and claimed by him as a homestead.

That the execution was against Clay, in his individual capacity, and that the judgment was against him as administrator, etc.

That William Valliant, in whose favor the judgment was rendered, died in June, 1870, and the judgment had not been revived by his administrator, executor, heirs, or any one else entitled by law to revive it.

That King, as sheriff, etc., had advertised the lands, and would sell them unless restrained, etc.

Prayer for injunction, etc.

A temporary injunction was granted, in the absence of the circuit judge, by the judge of the county court of Lonoke county.

On motion of King, P. H. Wheat was made a defendant, as an interested party, and permitted to file an answer and cross bill.

The answer admits that Clay was appointed administrator of Ferrell's estate, as alleged in the bill.

Alleges that in December, 1875, before the replevin suit, Wheat being the owner of a wagon, sold it to one Solomon Boyd, who sold and delivered it to William Valliant; that the wagon never was the property of Ferrell, or Clay.

That Clay, without right, brought the replevin suit for

the wagon, against Valliant, describing himself as administrator of Ferrell.

The answer then proceeds to set out, and exhibit, the proceedings and judgment in the replevin suit, as above shown.

Alleges that after the wagon was taken from Valliant and delivered to Clay, under the writ of replevin, Valliant demanded of Wheat that he should replace the wagon, or pay for it, and employ counsel and defend the suit. That Wheat delivered to Valliant another wagon, which was satisfactory, employed counsel and defended the replevin suit at his own expense, and for his own use and benefit, and that the suit resulted in a personal judgment against Clay for the value of the wagon, etc., which was right and proper, etc., and that the judgment belonged to Wheat.

That the effort of Clay to have the judgment altered by subsequent order of court, without notice to Wheat or Valliant, and without their appearance in court, or consent, was fraudulent, and said order void. That the entry of record that the parties appeared, was falsely made by the fraud, connivance and procurement of Clay. Denies that said judgment was entered by error or misprision of the clerk, but avers that it was deliberately entered by the then presiding judge of the court, after full argument, on the ground that an administrator must bring an action of replevin at his peril, and if he fail, must pay, and save his sureties harmless, and do justice to the defendant; and, after having wrongfully replevied property, he can not turn the defendant over to the pro rata per cent. of an insolvent estate; and upon the ground that plaintiff had received defendant's property from the sheriff, and defendant had a right to have a return of the property, or its value, and defendant having exercised his right of election,

and chosen to take the value, the law made no exception in favor of administrators; and as the administrator had received the property, it was no hardship to make him pay the value; and if there was any loss, and the suit was indeed brought in good faith,'the probate court could allow the administrator credit as for expense of administration for the excess.

Admits that the execution was issued as stated in the bill, and levied on the lands described therein.

Wheat makes his answer a cross bill or counter claim against complainants, and the administrator of Valliant, and avers that he is the owner of the judgment, and that it is unsatisfied, except $75, credited on the execution; all of which, but $28, was appropriated to costs, etc.

Avers that the lands levied on were bought and paid for out of the funds of Marion J. Clay; that the minor complainants were children, of tender years, and had no property or means of their own. That Clay bought said lands himself, paid therefor out of his own money, and being at the time indebted to Wheat on said judgment, as well as to other creditors, for the purpose of hindering, delaying and defrauding his creditors, caused the title to said lands to be made to his said minor children, except the tract claimed by him as a homestead, and between the fraudulent conveyances and his homestead right, was attempting to hold his creditors at defiance, etc.

Prayer that said fraudulent conveyance be set aside, and said lands be subjected to said execution, and that so much thereof as might be necessary be sold, and the proceeds appropriated to the payment of the judgment, costs, etc., and for general relief.

King adopted the answer of Wheat.

A summons was ordered for George W. Turner, as ad-

ministrator of Valliant, and a guardian *ad litem* appointed for the minor defendants to the cross bill.

The complainants demurred to the answer and cross bill; the court sustained the demurrer, and rendered a final de-. cree, making the injunction perpetual, and defendants appealed.

I. In considering the demurrer to the answer, etc., we may look back to the bill to see whether it makes a case for relief in equity.

Treating, for the present, as the bill does, the order of the Arkansas circuit court, of seventeenth of May, 1870, as a mere correction of a misprision of the clerk in entering the judgment of the court in the replevin suit, at a former term, no execution could be legally issued upon the judgment as corrected—none against the property of Marion J. Clay, because, after the correction, there was no personal judgment against him, and, under our system of administration, no execution against the estate of Valliant, could legally be issued.

There can be no doubt of the jurisdiction and power of the common law courts over their writs, and over the officers who execute them. And in the due exercise of this power, such courts may, on motion, recall and quash process illegally issued. *State Bank v. Noland et al., 13 Ark., 301.*

Clay, the defendant in the execution, had a simple and adequate remedy at law, by application to the court out of which the writ issued, to recall and quash it; and, if the court was not sitting, the judge, in vacation, could stay the execution of the process, until the court met. *Sec. 14, Art. 7, Const.; Gantt's Dig., sec. 2619.* His remedy being plain and ample at law, he had no ground to apply to chancery for an injunction, and, as to him, there was no equity in the bill. *Lansing v. Eddy, 1 Johnson's Chancery*

*Rep., 49; Anthony et al. v. Shannon, 8 Ark., 53; Moore et al. v. Granger, sheriff, et al., 30 Ark., 577.*

II. But the minor complainants stood upon a different footing; they were not parties to the execution—their father was the defendant in the execution—they had no legal right to apply to the law court, out of which it issued, to recall and quash it. The court might or might not have acted on their application.

The sheriff levied an execution against their father, upon lands owned by them, and they joined in the bill for an injunction. Insomuch as a sale and conveyance by the sheriff, would put a cloud upon their title, the better opinion seems to be that they could maintain a bill in equity to injoin the sale, and therefore there was, as to them, equity in the bill. *Horman on Execution, 614; Key City Gaslight Co. v. Munsell, 19 Iowa, 305; Kirkpatrick v. Buford et al., 21 Ark., 268; Conklin et al. v. Forster, 57 Ill., 108; 61 ib., 334; Dunn v. Tozer et al., 10 Cal., 167; Vogel v. Montgomery et al., 54 Mo., 577.*

III. But it is alleged in the cross bill, in answer to the claim of the minor complainants, that they are not the owners of the lands levied on; that the lands were purchased by Clay, the defendant in the execution, with his own money, and that he caused them to be conveyed to his two minor sons, to hinder, delay and defraud his creditors; and these allegations were admitted to be true by the demurrer to the cross bill. And the cross bill prays that the fraudulent conveyance be set aside, and the lands, or enough thereof, be sold to satisfy the execution.

In other words, the cross bill seeks the aid of chancery to uncover the lands and subject them to the satisfaction of the execution against Clay. But if the entry of the seventeenth of May, 1870, is not void, and the allegations of the

cross bill do not make a case for vacating it by decree in equity, as procured by fraud, then not only is the execution levied on the lands invalid, but it is founded on no personal judgment against Clay, and though Wheat may own the judgment, he is no creditor of Clay, and is in no condition to ask a court of chancery to set aside the alleged fraudulent conveyances; and the demurrer to the cross bill was properly sustained. *Meux v. Anthony, 11 Ark., 411; King v. Payan, 18 Ark., 589 ; Clark and Wife v. Anthony and Wife, 31 Ark., 546.*

IV. Is the entry void upon its face?

It was well settled by this court, before the adoption of the Code that a court has power, after the close of a term at which a judgment is rendered (as well as during the term), on proper application and notice to parties legally interested, to amend its record so as to make it speak the truth. *King et al. v. State Bank, 9 Ark., 185; Arrington v. Conrey et al., 17 ib., 100; Green v. State, 19 Ark., 178; Martin et al. v. State Bank, 20 Ark., 336; Freel v. State, 21 ib., 213; Alexander v. Stewart, 23 ib., 18.*

Failure to give notice to the adverse party, of the application to amend a judgment, is ground for reversing the order of amendment, on writ of error or appeal. *Alexander v. Stewart, and Martin et al. v. State Bank, sup.*

By provisions of the Code, the court in which a judgment or final order has been rendered or made, has power after the expiration of the term to vacate or modify such judgment or order for a number of causes specified, and among them: "*third,* for misprisions of the clerk." *Gantt's Dig., sec. 3596.*

The proceedings to correct misprisions of the clerk shall be by motion, upon reasonable notice to the adverse party, or his attorney in the action. *Ib., sec. 3597.*

As to what are misprisions of the clerk, see *Badgett v. Jordan, 32 Ark , 154*.

It does not appear in the transcript before us that any notice was given by Clay, to Valliant or his attorney, of the application to amend the judgment; but the record entry shows that the parties appeared, and on motion of Clay, upon facts shown to the court, the amendment was made.

The record entry does not show an attempt of the court to modify a judgment rendered at a former term, because of an error of the court in rendering it, but because of a misprision of the clerk in entering it. In other words, the judge presiding on the seventeenth of May, 1870, found on the facts shown to him, that the judge who was presiding, and tried the cause on the sixteenth of May, 1867, in fact, rendered a judgment against Clay as administrator, and by misprision of the clerk, a personal judgment was entered against him, and upon such showing an order was made modifying the judgment as shown by the entry.

It may be that the judgment was right, upon the facts as entered by the clerk, and it may be that the court erred in changing it, and that such error might have been corrected on writ of error or appeal; but in this case the order modifying the judgment comes before us collaterally, and the court having jurisdiction of the subject matter, we can not pronounce it void on its face. *Borden v. State, 9 Ark., 253*.

V. That chancery may vacate the entry, if procured by fraud, is well settled.

There is no direct allegation in the cross bill that notice was given to Valliant, or his attorney in the action, of the motion to amend. Nor is there a direct allegation

that Valliant did not appear, or was not present in person or by attorney, when the motion was made; nor are there any specific allegations of fraud on the part of Clay in procuring the entry to be made; nor is there any prayer that the entry be vacated. A party seeking to set aside a judgment or order of court, on the ground that it was procured by fraud, must allege the particular facts constituting the fraud. General allegations are not sufficient.

The court did not err in sustaining the demurrer to the answer and cross bill.

VI. After sustaining the demurrer to the answer and cross bill, the court, upon the bill, rendered a decree, perpetually enjoining the execution of the judgment as amended, without causing the administrator of Valliant to be made a party. The bill was against the sheriff only, who had no interest in the judgment, but was only charged with the official duty of executing the writ issued upon it, and placed in his hands.

Wheat, who claimed to be the owner of the judgment, very properly made Turner, the administrator of Valliant, a defendant to the cross bill, and took an order for a summons against him; but before the summons was issued, the case was disposed of on demurrer to the answer and cross bill, and the final decree entered. This decree is not binding upon the administrator of Valliant, because he was not made a party to the bill on which it was rendered, and, regardless of the decree, he might sue out another execution upon the judgment as amended.

It was an error in the court to render a decree without having before it a party necessary to make the decree final and effective. *Simmons et al. v. Richardson & May, 32 Ark., 297.*

For this error, the decree must be reversed, and the cause

remanded, with leave to appellees to amend the bill so as to make the administrator of Valliant a defendant; and with leave to Wheat to amend his cross bill so as to make the allegations of fraud in procuring the amendment of the judgment direct and specific; and also to amend the prayer thereof, and for such further proceedings as may be in accordance with principles of equity, and not inconsistent with this opinion.