HATCH v. JOHNSON LOAN & TRUST CO. et al.

(Circuit Court, D. Kansas. March 5, 1895.)

1. BANK RECEIVERS—NEGOTIABLE PAPER.
   A receiver of a national bank holds its negotiable notes subject to the same defenses that applied to the bank itself.

2. SAME—DEFENSES TO NEGOTIABLE PAPER.
   A bank which, through its cashier and managing officer, procures a note to be illegally made by a corporation to secure a debt due the bank from one of the corporation's stockholders, and which, after negotiating it to a bona fide holder, receives it back again, does not thereby become entitled to the protection of a bona fide holder.

3. CORPORATIONS—IRREGULAR ELECTIONS—EXECUTION OF NOTE AND MORTGAGE.
   The acts of some of the directors who are the principal stockholders in electing officers, and through them executing a note and mortgage with-

out the notices required by the by-laws and in defiance of their provisions are void as to other owners and bona fide pledgees of stock.

4. SAME--ATTACHMENT—MORTGAGES.
The levy of an attachment on corporate property in an action on a debt against the principal stockholder can give no rights as against any mortgages, based upon a valid consideration as to such stockholder, which were executed prior to the levy of the writ.

5. SAME.
Where a stockholder caused a note and mortgage on the corporate property to be illegally executed in part as security for his own debt and in part for a debt due from the corporation, *held,* that the mortgage should stand as an equitable charge against the property of the corporation to the extent of its own debt.

6. BANKS AND BANKING—CHECKS OF CORPORATION—MISAPPLICATION OF PROCEEDS.
A bank cashier or teller may pay out a check drawn in the name of a corporation in the usual course of business, and when there are no circumstances of suspicion to put him on inquiry, without any investigation as to the destination of the money drawn; and the bank is not to be held liable if the money is misappropriated.

Peters & Nicholson, for Hatch, receiver.
Throop & Brown, for F. J. Hess and Highland Hall Co.
John A. Eaton and John C. Pollock, for First Nat. Bank.

WILLIAMS, District Judge.   H. F. Hatch, as receiver of the American National Bank of Arkansas City, Kan., on the 20th day of September, 1892, filed in this court his bill in chancery against the defendants to enforce a lien he claimed upon the property of the Highland Hall Company, consisting of certain real estate at Arkansas City, Kan.   His lien, he alleged, accrued to him in a suit at law in this court against one Frank J. Hess, wherein a writ of attachment had issued and had been levied upon the property of said Hess, also upon property standing in the name of the Highland Hall Company, to secure and satisfy the claim which the said Hatch set up against said Hess.   It was averred that the said claim, amounting to $10,994.63, went to judgment, and that the grounds of said attachment were sustained, and that the judgment still remains unsatisfied.   The bill then sets forth the execution of a mortgage in the name of said Highland Hall Company to the Johnson Loan & Trust Company on the 24th day of December, 1890, purporting to convey the real estate owned by that company to the said loan and trust company to secure a note for $20,000 of that date to the said Johnson Loan & Trust Company, payable July 1, 1891, at the office of said loan and trust company, bearing interest at the rate of 10 per cent. per annum from maturity.   It was averred that the note and mortgage were fraudulent, because the said Highland Hall Company did not owe anything to said Johnson Loan & Trust Company at the date of execution thereof or subsequently; that they were executed for the purpose of defrauding complainant, and were the result of a conspiracy entered into between said Frank J. Hess and the officers of the Johnson Loan & Trust Company and the First National Bank of Arkansas City; that no consideration passed for said note or mortgage from said First National Bank or from the National Bank of Commerce to either said Highland Hall Company or Frank J. Hess; that, if any

consideration had ever passed, it had wholly failed; that the note and mortgage were void, because they were executed without authority from the board of directors of said Highland Hall Company, and by a person who had at the time no authority to act as president of the said Highland Hall Company; that the person who pretended to execute the same as president, R. U. Hess, was not a director in said company; and that at said time one A. B. Johnson was the president of said company. And it further averred that the said pretended mortgage was obtained through the connivance, collusion, and fraud of H. P. Farrar, who was at that time, and also at the date of the filing of the bill, cashier of the said First National Bank, and that the said Johnson Loan & Trust Company, about the date of the execution of the note and mortgage, delivered the same to the said First National Bank, which transferred the same to the National Bank of Commerce of Kansas City, which was holding the note and mortgage for said First National Bank in conformity with a conspiracy between the said three last named corporations. The bill prays that the mortgage be canceled, and for such other relief in the premises as the nature of the case shall require.

The National Bank of Commerce of Kansas City has not been served with process, and has not entered any appearance in the suit. Indeed, there is nothing to show service upon any of the defendants to the bill. The bill has not been answered. But George W. Robinson, receiver of the First National Bank of Arkansas City, waived service of a subpœna under said bill, and filed a cross bill and a supplemental cross bill, and these were answered by the Highland Hall Company and Frank J. Hess. Nothing among the papers in the cause shows service of process on the cross bill upon H. F. Hatch, receiver of the American National Bank of Arkansas City. The cross bill of George W. Robinson, as receiver, etc., recites that the First National Bank of Arkansas City has become insolvent; that Robinson has been appointed receiver thereof, to take charge of and collect its assets, by the comptroller of the currency; and that, in order that all matters touching the complaint and all controversies may be fully adjudicated, and that final decree may be made herein regarding and touching the real estate in controversy, and the alleged lien of the complainant and the lien of the First National Bank of Arkansas City, Robinson asks leave to withdraw his demurrer to the bill, and files this his cross bill. It alleges, among other things, that the American National Bank has become insolvent, and H. F. Hatch has been appointed receiver thereof; that the Johnson Loan & Trust Company, First National Bank of Arkansas City, the Highland Hall Company, and the National Bank of Commerce of Kansas City are all corporations. It admits the allegations of the bill so far as relates to the issuance of attachment and recovery of judgment. It states that the Highland Hall Company was a corporation organized under and pursuant to the laws of the state of Kansas, and having its chief office and place of business at Arkansas City, Kan., and that as such it was, by and under its charter, engaged in the business of buying, improving, selling, and renting real estate; that Frank J. Hess was a large stockholder in the said Highland Hall Company,

and a director therein. It questions the existence of any lien by virtue of complainant's attachment on the property of the Highland Hall Company. It states that the said Highland Hall Company at all times had a duly elected and qualified board of directors, and that said board of directors had full charge and control of the business of said corporation, and that all of the corporate powers and business of said corporation were exercised and transacted by and through such board of directors and the officers of said corporation, consisting of a president, vice president, secretary, and treasurer. It is then alleged that on the 24th day of December, 1890, the Highland Hall Company, to secure an indebtedness it owed to the Johnson Loan & Trust Company, through its duly-authorized president and secretary, executed to said loan and trust company its note for $20,000, payable July 1, 1891, and a mortgage upon its real estate at Arkansas City to secure the same; that said mortgage was duly filed for record on December 27, 1890, in the proper office; that said note was subsequently negotiated in due course of trade by said loan and trust company to said First National Bank, and that it was afterwards negotiated for value, before maturity, in due course of trade, by said First National Bank to the National Bank of Commerce of Kansas City; that at the request of the First National Bank the said mortgage was afterwards transferred by said loan and trust company to said National Bank of Commerce; that the note was indorsed by said loan and trust company without recourse, and its payment was guarantied by Frank J. Hess; that the said note and mortgage are now owned by the said receiver of the First National Bank, the said First National Bank having paid off to the National Bank of Commerce the indebtedness for which the note and mortgage had been held as collateral. It denies any fraud or collusion in the execution or delivery of said note and mortgage, or the negotiation thereof, and says that the same were executed for the purpose of evidencing said indebtedness, and securing the same to said Johnson Loan & Trust Company by said Highland Hall Company. It is contended in said bill that the transfers to the First National Bank and to the National Bank of Commerce relieved the note and mortgage from any defenses which may have existed thereto by the Highland Hall Company against the Johnson Loan & Trust Company. It is also alleged that Frank J. Hess, by virtue of his ownership of a large portion of the stock of said Highland Hall Company, has control of its property, and, under the direction of its board of directors, has rented and is collecting the rents of its property, aggregating $200 per month thereof, and has appropriated the same to his own use; that he has allowed the taxes upon its property to remain unpaid, until now the lien for taxes to the state amounts to $2,414.49, and that, to prevent a tax deed being executed by the county clerk of Cowley county to the holders of the tax certificates, said Robinson, as such receiver, had instituted a suit, and obtained an injunction; that said Frank J. Hess had allowed said taxes to remain unpaid with a view of depriving the receiver of said First National Bank of its mortgage, and was conspiring with H. F. Hatch for this purpose. It was prayed therein that a receiver to collect rents and pay taxes should be appointed,

and that the mortgage held by said Robinson, as receiver, etc., be foreclosed, and the property therein set forth be sold; that the priorities of the several liens be decreed herein, and that all orders and decrees necessary in and about a full adjudication and determination of all matters and controversies in this action may be herein had. The recitals of the so-called "supplemental cross bill" merely particularized the manner and times at which the note of the Highland Hall Company for $20,000, in controversy, was negotiated and renegotiated to the National Bank of Commerce by and to the First National Bank.

The Highland Hall Company filed an answer to the cross bill of George W. Robinson, as receiver, on September 11, 1893, and subsequently, on October 2, 1893, filed an answer and cross bill to the cross bill of said Robinson, upon which no subpœna appears to have been issued, nor is there any answer thereto. The first of these recites that the board of directors of the Highland Hall Company on December 24, 1890, consisted of H. P. Farrar, Fred W. Farrar, J. L. Huey, A. B. Johnson, and Frank J. Hess, who were duly qualified and acting as such for all of the years of 1890 and 1891; that A. B. Johnson was president and Frank J. Hess was secretary during said time; that during the same time H. P. Farrar and Fred W. Farrar were, respectively, cashier and assistant cashier of the First National Bank of Arkansas City. It denied that the said company had ever been indebted, except in 1889, in the sum of $4,000, to said First National Bank, which had been paid off in the year 1889; that Frank J. Hess, who had parted with all of his stock in the Highland Hall Company to C. W. Purinton, W. C. Brown, and other parties, who are named, being indebted, at the time of the execution of the note and mortgage for $20,000, to said First National Bank in the sum of $41,000, and to partly secure the same, and keep the bank from failing, by collusion between the two Farrars and said Hess caused to be executed the said note and mortgage to the Johnson Loan & Trust Company; that the reason the First National Bank was not named as mortgagee was to evade the national banking law in reference to taking notes secured by mortgage upon real estate, and for the purpose of getting around the provisions of the laws of the United States regulating national banks, and prohibiting the loan of more than 10 per cent. of their capital to more than one individual or corporation; that this was done without the authority or a meeting of the board of directors, when the president of the company was off on a wedding trip, and without knowledge of J. L. Huey, one of the directors, R. A. Hess signing the same as president of the company at the office of H. P. Farrar, as cashier of the First National Bank; that said note and mortgage were then kept, and have ever since been retained, by said H. P. Farrar among the assets of said First National Bank until the appointment of the receiver thereof; that no consideration moved to it from the Johnson Loan & Trust Company; that it had no knowledge of any transfer of said note or mortgage to the National Bank of Commerce; that the Johnson Loan & Trust Company never had any-

thing to do with the making or delivery of said note or mortgage; that the said Highland Hall Company had no authority to make the said note and mortgage; that its real estate was worth $3,000; that it owed nothing thereon, and had husbanded its rents and income. The other answer and cross bill does not materially differ from that just mentioned, except that it contains denials of the allegations of the cross bill of Robinson.

The answer of Frank J. Hess to the cross bill of Robinson admits that he was indebted to the First National Bank of Arkansas City in the sum of $41,000, and says that the note and mortgage of the Highland Hall Company were executed, in evasion of the national banking laws, as set forth in the answer of said company, to the Johnson Loan & Trust Company. He denies that he owned or that he controlled all of the stock of the said Highland Hall Company at the time the note and mortgage for $20,000 were executed, but says that he had placed the same in the hands of his creditors in good faith for the indebtedness he owed them in excess of the face value of such stock.

The testimony in the case established the following facts: The Highland Hall Company was a company which was incorporated May 13, 1882, under the laws of Kansas, with a capital of $10,000, for the purpose of constructing buildings, and of buying, selling, and leasing real estate; also of loaning money on real estate and personal security, discounting notes, and such other business as might be authorized by law. Its place of business was Arkansas City, and the term for which it was incorporated was 99 years. It adopted a set of by-laws, which, among other things, provided that: "The directors of this company shall have charge of all property belonging to this company, and shall have general supervision of all business transacted by this company. They shall audit all bills against the company, and no bill shall be paid till so audited." Article 16. After providing for the mode of electing a board of directors at a meeting of stockholders "thirty days' notice of [the] time and place" of which had to be "published in some newspaper in Arkansas City," it goes on to say how and when the board shall organize and proceed to an election of officers. It further provides that "the officers of the company shall consist of a president, vice president, secretary, and treasurer, * * * which shall hold their position one year, or until their successors shall have been elected and qualified." The mode of casting votes for officers is provided for, and also how many of the board shall constitute a quorum. There are to be regular monthly meetings of the board of directors on the first Monday in each month for the transaction of such business as may be necessary. The duties of the president, vice president, secretary, and treasurer are provided for. It was made the duty of the president to preside at all meetings when present, call extra meetings when necessary, and to have general superintendence of the affairs of the company. The duties of vice president were virtually the same as those of the president when the latter, from any cause, was unable to attend. The secretary's duties were "to keep a true and

correct record of all meetings and actions of the board of directors."
The treasurer's duty was to collect and receive and keep all funds
of the company, and disburse the same only on orders of the pres-
ident, attested by the secretary.   The Highland Hall Company,
among other things, duly acquired lots 6, 7, and 8, in block 68,
Arkansas City, upon which there were valuable improvements, on
March 7, 1887.   On that day it sold said property to Frank J.
Hess for $30,000, of which $10,000 was in the shape of an incum-
brance, which said Hess assumed, and he paid $2,500 in cash, and
gave his notes for the remainder.   A deed was made by the com-
pany, which was placed in escrow, to be delivered when the notes
were paid.   He could not meet the notes without borrowing the
money, and to enable him to do this the stockholders of the com-
pany seem to have transferred to him all of the stock of the com-
pany, aggregating $10,000.   Of this stock 998 shares were held in
his own name, and 1 each of the 2 remaining shares was held
by H. P. Farrar and A. B. Johnson.   This was on or about
May 9, 1888.   On the same date these three stockholders met, and
increased the stock to $50,000, or 5,000 shares of $10 each.   On
the same day the old board of directors and officers resigned, and
new ones were elected, and a copy of the resolution at the stock-
holders' meeting, signed by A. B. Johnson as president, and at-
tested by H. P. Farrar, and certified to by four directors, showing
the increase of stock, was forwarded to the secretary of state of
Kansas.   Of the 5,000 shares so created, Frank J. Hess received
all but 4 shares, 1 each of said 4 shares being issued to J. L. Huey,
F. W. Farrar, H. P. Farrar, and A. B. Johnson, who held the same
merely as nominal stockholders.   To pay for this stock, and jus-
tify an increase of stock, Frank J. Hess reconveyed to the High-
land Hall Company the property he had purchased from it (upon
which he claimed to have expended $5,000) for $35.000, and con-
veyed some other property known as the "Office Building," of the
value of $15,000.   This stock so issued to Hess was hypothecated
in pledge or absolutely transferred to different parties at different
times.   On December 24, 1890, the books of the Highland Hall
Company showed that the stock owned by Frank J. Hess was still
in his name, except 500 shares, which appeared in the name of his
wife.   He had received from her $3,000, and there is nothing in
the evidence to show that she made him a present of it.   There
was evidence tending to show that he had used this $3,000, and
made money out of it.   It is claimed that he made $10,000 to $15,-
000 out of it, which formed the basis of the transfer of the stock
to her.   The other shares were held in pledge on December 24,
1890, by Charles W. Purinton, W. C. Brown, the Union Guaranty
Savings Bank, the American National Bank of Arkansas City, and
the First National Bank of Arkansas City, though such pledges
were not noted on the books of the company.   Frank J. Hess was
also a large stockholder in other corporations, and he kept the
run of the business of these corporations, including that of the High-
land Hall Company, at his office, keeping an account with each of
them.   He mingled their bills with his, and paid their debts some-

times with his funds, and his debts with their funds. He owed to the First National Bank of Arkansas City $41,000 on December 24, 1890. Part of this he claimed was the debt of the Highland Hall Company, and he says it exceeded $20,000. But the evidence does not sustain this view. On the contrary, it shows that a very much smaller sum, if anything, had gone to the Highland Hall Company out of this indebtedness to help pay indebtedness which it had owed upon property. The receipts from its rents are not shown. These went, so far as the evidence discloses, to Frank J. Hess. On December 24, 1890, on the suggestion and at the instance of H. P. Farrar, cashier of the First National Bank, he procured a note for $20,000, payable July 1, 1891, with interest from maturity till paid at the rate of 10 per cent. per annum, and a mortgage on all the real estate it owned to secure it, to be executed in the name of the Highland Hall Company to the Johnson Loan & Trust Company. The name of the Johnson Loan & Trust Company was used to deceive the officers of the government who should be directed to examine into the affairs of the said First National Bank. There is no evidence tending to show that the Highland Hall Company was indebted to the Johnson Loan & Trust Company. For the purpose of having the note and mortgage properly executed, a lawyer was consulted by H. P. Farrar, at whose direction a resolution was written out to be adopted by the board of directors of said hall company. In a conference held at the First National Bank between H. P. Farrar, F. W. Farrar, and Frank J. Hess it was agreed that, as these three comprised a majority of the board of directors of the hall company, they would at once pass the resolution, which they accordingly proceeded to do, Hess writing out the minutes for this purpose. The resolution read as follows: "Resolved, that the president and secretary are hereby authorized to borrow twenty-five thousand ($25,000.00) dollars on lots 6, 7, and 8, block 69," etc. "Frank J. Hess, Chairman." This record was also signed by H. P. Farrar and F. W. Farrar. This was no regular meeting. It had not been held pursuant to any notice served upon any of the directors. The president, A. B. Johnson, who was a director, was at the time absent on a wedding trip; and J. L. Huey, the other director, was at home sick. No attempt was made to notify either of these, probably because it was deemed unnecessary by the parties. It being ascertained by Hess that Johnson was absent from the city, he went to H. P. Farrar, and the minutes of the Highland Hall Company were then altered so as to show that R. U. Hess was elected a director in place of J. L. Huey, who, it was first said on the minutes, had "resigned," but this was changed to show that he had "not qualified." The minutes were also changed so as to show that R. U. Hess was elected president of the company on December 22, 1890, and A. B. Johnson vice president, whereas in fact A. B. Johnson had been president of the company. R. U. Hess does not appear to have been a stockholder in the company at this time. Neither J. L. Huey nor A. B. Johnson appear to have sent in their resignations, or to have been advised of these proceedings. Thereafter, R. U.

Hess, as president, and Frank J. Hess, as secretary, executed the note and mortgage for the $20,000. This note was immediately indorsed without recourse to the First National Bank, and it negotiated the note to the National Bank of Commerce, before maturity, for value, in the usual course of trade, on two different occasions; the said National Bank of Commerce having taken the same on both occasions without notice, in good faith. The note and mortgage were taken up and are now owned by the First National Bank.

The relationship between the Farrars and Frank J. Hess leaves no doubt that they knew all of the circumstances attending the connection of Hess with the Highland Hall Company, the circumstances attending the contraction of the debt of $20,000 covered by the note and mortgage, and the manner in which. it·was executed. The note and mortgage were undoubtedly executed at H. P. Farrar's instance for the benefit of the bank of which he was then cashier, and, so far as appears, manager. The American National Bank of Arkansas City and the First National Bank of Arkansas City are both insolvent, and their assets are in the hands of receivers appointed by the comptroller. H. F. Hatch is receiver of the American National Bank, and George W. Robinson is the receiver of the First National Bank. The latter now holds, and claims a decree to enforce, the note and mortgage for $20,000 against the Highland Hall Company. The stock of the Highland Hall Company is now held as follows: H. F. Hatch, as receiver of the American National Bank, holds 1,000 shares, as pledgee of Frank J. Hess, on a debt of $10,994.63; W. C. Brown holds 800 shares; George W. Robinson, as receiver of the First National Bank, holds 200 shares,. in pledge from Frank J. Hess; Mary A. Hess holds 500 shares; C. W. Purinton holds the remaining shares in pledge from said Hess. Purinton holds other security, as does Robinson. The property known as the "Office Building" has been heretofore released from the mortgage.

The testimony in this case clearly shows that the note and mortgage for $20,000, purporting to have been executed by the Highland Hall Company, a corporation of the state of Kansas, cannot be enforced in the hands of Robinson, as receiver of the First National Bank of Arkansas City. He holds these subject to the same defenses that applied to the bank itself. Casey v. La Société de Credit Mobilier, 2 Woods, 77, Fed. Cas. No. 2,496; Yardley v. Clothier, 3 U. S. App. 207, 221, 222, 2 C. C. A. 349, 51 Fed. 506. That bank, it is plain, took the note and mortgage with notice of all defenses thereto. It was executed for a pretended indebtedness to a third person,—that is, the Johnson Loan & Trust Company,—although it was known that nothing was due to that company by the Highland Hall Company by the parties who acted for said bank, and it was used to enable the bank to protect itself against loss on the debt that Frank J..Hess owed it. H. P. Farrar, its cashier, knew all the circumstances attending the execution of said note and mortgage at the time of its execution. It is folly to say that under such circumstances it is a holder for value, and in good faith, of the note. Mechem, Ag. §§ 718, 724, 729; Tied.

Com. Paper, § 116. The note and mortgage were executed in a manner prohibited by law. Three of the directors, without notice to the other two, who composed the board of directors of the Highland Hall Company, undertook to hold a meeting, and authorized the execution of the note and mortgage. And when they discovered that the president, A. B. Johnson (who was also a director), was absent on a wedding trip, they ousted the other absent director, J. L. Huey, without notice or resignation, and proceeded to install a brother of Frank J. Hess as a president, and with a stroke of the pen converted Johnson into a vice president. 2 Cook, Stock. Stockh. & Corp. Law (3d Ed.) § 713a; Paola & F. R. Ry. Co. v. Anderson Co. Com'rs, 16 Kan. 302, 306; Farwell v. Copper Works, 8 Fed. 66; Bank v. McCarthy, 55 Ark. 473, 18 S. W. 759. No doubt they were actuated by the belief that, as the affairs of the corporation had been conducted with no more regard for form in the past, and because Hess was the original owner of nearly all the stock, it was legitimate to go thus far now; for the end seemed to them to justify the means. The authorities, however, condemn such proceedings where stockholders or pledgees of stock exist and require protection, and corporation assets are thereby diverted. McLellan v. File Works, 23 N. W. 321, 56 Mich. 579; New York Iron Mine v. First Nat. Bank of Negaunee, 39 Mich. 644; Button v. Hoffman, 61 Wis. 20, 20 N. W. 667; Winona & St. P. R. Co. v. St. Paul & S. C. R. Co., 23 Minn. 359; Baldwin v. Canfield, 26 Minn. 43, 1 N. W. 261; Bartlett v. Brickett, 14 Allen, 62; Millsaps v. Bank (Miss.) 13 South. 903; Manufacturing Co. v. White, 42 Ga. 148. Nor was anything cured or strengthened by the negotiation of said note, before maturity, as collateral security for future advances, to the National Bank of Commerce, on two different occasions. It finally came back into the hands of the original payee charged with the same equities and defenses as applied to it when first issued. 1 Story, Eq. Jur. § 410; Wade, Notice, § 63; Sawyer v. Wiswell, 9 Allen, 42; Calhoun v. Albin, 48 Mo. 304: Kost v. Bender, 25 Mich. 516; Benj. Chalm. Bills, 101; Tied. Com. Paper, § 155.

But the pleadings in the case are faulty. While the desire of the parties seems to be to have the rights of all parties settled, the court is not placed in that control of the property and over parties which the practice of the court in equity requires. The bill itself relies, as at present framed, solely on a lien which it is claimed accrued by virtue of the levy of an attachment on property, in a suit at law, on a debt against Frank J. Hess. This gave no rights as to the Highland Hall Company's property as against any mortgages, based upon a valid consideration as to Hess, executed prior to the levy of the writ of attachment. King v. Clay, 34 Ark. 291; Millsaps v. Bank (Miss.) 13 South. 903, 907. The proof shows without possibility of contradiction that at the time the bill was filed the complainant was the possessor, as pledgee, of 1.000 shares of the stock of the Highland Hall Company for the debt Frank J. Hess owed. And as the cross bill of Robinson, receiver of the First National Bank, seeks to put the court in pos-

session of the res, and this is concurred in by the answer and cross bill of the Highland Hall Company, the court ought now to allow an amendment to the bill so that it may now count upon the collateral so held. The parties defendant to the bill and cross bill of Robinson at least should be served with process, where they have not waived the service of process, and entered their appearance, or, what is equivalent thereto, filed answer. Robinson's cross bill is, in effect, an answer to the bill as it now reads. Inasmuch as the contesting parties are Hatch, receiver, etc., as pledgee of the Highland Hall Company stock, and the Highland Hall Company, on the one side, and Robinson, receiver, etc., the holder of its note and mortgage, on the other side, any equities which the holder of the said note and mortgage may have in virtue of the moneys which were expended by Hess out of the amount for which the note and mortgage were to stand as security for the benefit of said Highland Hall Company and the release of incumbrances upon its property should be made an equitable charge upon the property mentioned in said note and mortgage, and the proceeds thereof subjected to any offsets for rents collected, paramount to the claims of any holders of stock, under pledge or by transfer, for any debt Frank J. Hess owed. Millsaps v. Bank (Miss.) 13 South. 903.

The cross bill of Robinson refers to a delinquency in payment of taxes on the property of the Highland Hall Company, and to a sale of the property for taxes. But this is a matter which is not presented in a shape that the court can deal with it. For aught that appears to the contrary, the holders of the tax certificates are entitled to their tax deed, and to a remedy for the recovery of these lands. The parties who hold the certificates do not appear to be before the court in this cause, but are, as the cross bill of Robinson alleges, parties to a suit brought by him in another court to restrain the issuance of deeds.

When the bill is reformed as indicated, and cross bills have been duly answered, or service thereto has been waived (which can, perhaps, be done without the necessity of taking further proof), the proper course, it seems to me, would be to refer the whole case again to a master to ascertain how much of the money owing by Hess to Robinson as receiver went to pay off indebtedness to the Highland Hall Company, less such offsets for rents collected as may have been received by Hess or the First National Bank out of its property prior to the date of the note and mortgage, and not met by expenditures of Hess or said bank for the benefit of the Highland Hall Company; and, when this amount has been ascertained from the proof already in and any additional testimony which the parties may desire to present, a decree should go therefor, and a lien be imposed on the property to satisfy the same. This, if not paid in a given time, to be fixed, should be satisfied by a sale of the property not heretofore released from the mortgage. And the proceeds remaining after the lien thus fixed and the costs of the reference and sale have been paid should be turned over to the Highland Hall Company for the benefit of its stockholders.

The costs incurred in subpœnaing the parties to the bill of complaint as it now stands should be imposed on the complainant, and Hess should be awarded no costs on his answer. The bill should be dismissed, as to the National Bank of Commerce of Kansas City, at the cost of complainant. The costs of the second reference should abide the event, and, if there is nothing due Robinson, he should pay the costs of such reference. All other costs should be imposed on Robinson.

### On Exception to Master's Report.
#### (March 16, 1897.)

WILLIAMS, District Judge. Two references have been had to a special master in this cause since March 5, 1895, the day the opinion was delivered by the court. A large amount of testimony has been taken thereon, and two reports have been made by said master. Exceptions have been filed to the first of these reports by the complainant, by the Highland Hall Company, and by the First National Bank of Arkansas City. No exceptions are interposed to the second of said reports. The exceptions of the complainant and Highland Hall Company are similar in every respect. The exceptions of the bank are accompanied by interrogatories which the master has undertaken to answer in his second report. Items 2, 4, and 6 of the first division of the first report under consideration have not been excepted to. Neither has item 5 of the second division of the report been excepted to. As to these matters the report stands unimpeached, and these matters have been passed over as not open to further controversy. The master's reports with reference to these uncontroverted items ought, therefore, to stand approved and confirmed.

The other items which are objected to will be taken up in their proper order. The first item of debit against the Highland Hall Company is excepted to by all the parties named. This item relates to a note for $1,000, executed by F. J. Hess to H. P. Farrar, cashier of the First National Bank, dated November 9, 1887, and due January 10, 1888. The note represents purchase money of the property now owned by the Highland Hall Company. This item ought not to be credited to the bank against the Highland Hall Company. The property owned by the Highland Hall Company was conveyed to it by Frank J. Hess in payment for the $50,000 capital stock of that company he received, excepting four shares. It did not obligate itself to pay any outlays Hess had made upon, or moneys he had borrowed to enable him to buy, the property so conveyed to it. Hess received value for the property he so conveyed in the shares of stock issued to him. If he borrowed money from the First National Bank to pay for this property, and executed his note therefor, that could not constitute a proper charge against the Highland Hall Company. This item, as well principal as interest upon the note, should be disallowed, and the exceptions of the complainant and the Highland Hall Company as to this should be sustained, and the exceptions of the First National Bank as to this item should be overruled.

The exceptions of the complainant and the Highland Hall Company to the third charge of $250 are too vague to be considered, and ought for that reason to be overruled.

The exception of the complainant and the Highland Hall Company to a credit of $5,216.63 and interest thereon, embodied in the fifth item of debits charged against the Highland Hall Company by the master, is partially well taken. As against these items there are items which are credited to the Highland Hall Company. The credits are not objected to, but the debits are. As they are a stand-off to each other, except in the matter of interest, the findings of the master should only be disallowed as to the matter of interest in item 5 in excess of the same matter in item 4 (in the second part of the report). This would lead to the striking out of item 5 of the sum of $776.35; that being the difference between the aggregate of debits in item 5, to wit, $12,141.35, and the aggregate of credits in item 4, to wit, $11,365. It is difficult to understand how this matter could be a legitimate charge against the Highland Hall Company beyond the amount actually deposited; for, as has already been stated, the Highland Hall Company was not obligated to pay any loans made to Hess to satisfy incumbrances or indebtedness existing against property which he had conveyed to the Highland Hall Company for the stock of that company, which he had received and has since negotiated. The exceptions of the said complainant and the Highland Hall Company should be sustained as to so much of item 5 of the debits (first division of the report) as charges the sum of $776.35 interest, and as to so much the said item in the report of the master should be reduced and disallowed.

All of the other exceptions of the complainant and the Highland Hall Company to the master's report ought to be overruled.

The second exception of the First National Bank to the report ought to be overruled. The bank claims a lien on account of moneys advanced by it to Hess, the benefit of which went to the Highland Hall Company. It must work out its equities by showing what became of the funds which came from it into Hess' hands. As against this, what was collected in rents from property belonging to the Highland Hall Company, at least to the extent allowed by the master, should be a set-off. The master has arrived at a result which is fair to the bank, and it ought not to complain.

The third exception of the bank to the master's report, in view of the answers which the master has made to the questions therein propounded, should be sustained. The bank is entitled to be credited with all amounts paid out on the checks of the Highland Hall Company, drawn in the regular course of business, and which it did not know went to purposes foreign to the objects of the corporation. The master answers the question propounded upon this point by the bank as follows: To the question "B" ("whether all checks drawn were not signed by the Highland Hall Company") he answers, "Yes," and to the question "C" ("whether the bank had any knowledge as to where the moneys contained in said account origi-

nated, and for what purpose the same was drawn by such checks") he answered, "No." And he answered that all the moneys deposited in said account were drawn out by such checks. Under these circumstances, to hold the bank responsible for so much of said deposits as were checked out and used other than for the benefit of the Highland Hall Company would be to burden it with a duty not understood to exist. A bank's cashier or teller may pay out a check of a corporation, when it is drawn in the usual course of business, and there are no circumstances of suspicion to put him on inquiry, without instituting a preliminary inquiry (as to what is to be the destination of the money drawn) before the check is honored. The bank was bound to pay the check when drawn by the company in the usual course of the company's business. Benj. Chalm. Bills, art. 260. The officers of the corporation whose funds were checked out were appointed to look after these matters, and if neither they, nor the stockholders of the corporation, nor any other person holding the stock of the corporation, knew of facts to put the bank's agents on inquiry, or if, knowing them, they failed to put those agents upon notice, it can hardly be claimed with justice that the bank's agents should be blamed, or the bank should be saddled with the loss. The entire amount checked out by the Highland Hall Company should be credited to the bank. The amount deposited and drawn out was $2,812.19, and the interest computed upon this is $116.22. The same amount should be charged in item 3 of the debits, and the master's report in this respect is not sustained. The amount allowed as a charge against the Highland Hall Company by the master in this item is $2,096.93, to which $831.48 of principal and interest should be added, making a total of $2,928.41.

The only other exception to the report mentioned is that of the bank to item 5 of the second part of the report. This relates to a matter of $10,000 and interest. It was an amount found to have been deposited by F. J. Hess in the First National Bank to his individual account. If it had been received from the Highland Hall Company, or for its account, with the knowledge of the First National Bank, and deposited in the name of F. J. Hess, it would have been a proper item of credit in favor of the Highland Hall Company. But no such facts are found to have existed. And, in the absence of such facts, the credit is clearly improper. If F. J. Hess deposited $10,000, he owed more than that. The bank was not obliged, under the circumstances, to place these $10,000 to the credit of the Highland Hall Company; and as to this item the exception ought to be sustained. The result of the examination is that the following items must be subtracted from the aggregate of the debits found by the master in favor of the Highland Hall Company, to wit: Principal, $1,000; interest, $354.66 and $776.35,—and that $831.48 must be added to the aggregate found by the master, which would make the aggregate debited against the Highland Hall Company and credited to the bank equal the sum of $32,153.02, instead of $33,452.55. And the amount of credits in favor of the hall company and the debits against the bank should stand as shown by the master except as to the items of principal, $10,000; interest, $1,943.34. After deducting

these, the aggregate of said credits in favor of the hall company will be $18,249.44, instead of $30,192.78, as found by the master. The difference between the amount of $32,153.02 and $18,249.44 ought to be decreed to the First National Bank herein. This amount is $13,903.58, with interest thereon from the date of this decree. The amount due to the Farmers' National Bank for taxes, as ascertained by the master, to wit, $2,413.89, with interest thereon at 12 per cent. from October 17, 1894, until paid, should be made a first charge upon the property of the Highland Hall Company after the payment of the costs of the second and third references. After the payment of the taxes, the amount due the First National Bank should be paid.

As to all costs not already provided for in this and the former opinion of the court, a decree should go against Frank J. Hess, with leave to the parties in interest to issue an execution in the name of the complainant therefor against the property of the said Hess. But the costs of said execution, if not realized out of the property of said Hess, should be borne by the party suing out said execution. The Highland Hall Company should have the privilege of paying off the amount due for the references to the master, the amount due to the Farmers' National Bank for taxes and interest, and the amount decreed to the First National Bank, within 60 days from this date, if it elects to do so; otherwise a sale should be had of so much of its property as may be necessary to satisfy the claims, upon the same terms and conditions as apply to sales of similar property under mortgage foreclosure decrees. And this cause should be reserved for further orders as to parties claiming to hold shares of stock of the Highland Hall Company as pledgees of Frank J. Hess; also as to any creditors of the Highland Hall Company.